UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL GIBILISCO, TRUSTEE OF THE GIBILISCO TRUST DATED 2/5/1996, and PIDRU FAMILY LIMITED PARTNERSHIP UNDER AGREEMENT DATED 6/26/1995,<br>    Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br>    Defendant. | No. 3:14-cv-00294 (JAM) |

**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**

The parol evidence rule generally forbids proof of an oral agreement when used to vary or contradict the terms of a later agreement that has been set forth by the parties in writing. The rule "is of ancient origin and may be simply stated, but its application is complex, enigmatic, perplexing, and confusing." 11 WILLISTON ON CONTRACTS § 33:1 (4th ed. 1993 & Supp. 2012).

This is a breach of contract case brought by two investors who complain that their broker did not invest their money as they wanted. Plaintiffs claim that they reached an *oral* agreement with their broker in late 2007 to invest their funds conservatively, mostly in highly rated corporate bonds. Plaintiffs then signed certain *written* agreements with their broker, stating detailed investment preferences for a riskier portfolio involving a significantly higher proportion of common stock equities rather than bonds. Their broker invested in accord with plaintiffs' written preferences, and plaintiffs lost more than $1.2 million during the financial crisis of 2008.

Apparently unaware of the operation of the parol evidence rule, plaintiffs initially filed this lawsuit claiming that their broker failed to follow the terms of their oral agreement, despite

the fact that their oral agreement was contradicted by the parties' later written agreements. I granted defendant's motion to dismiss on the ground that the parol evidence rule barred plaintiffs' claim.

Now, plaintiffs have filed an amended complaint in an effort to avoid application of the parol evidence rule. The complaint newly alleges that, shortly *after* the parties entered into their written agreements, the parties orally agreed to a modification of the written agreements to re-incorporate the conservative investment preferences to which the parties had initially orally agreed *prior* to their written agreements. Not surprisingly, defendants have moved once again to dismiss plaintiffs' claim.

I conclude that the parol evidence rule requires dismissal of this action. True enough, the parol evidence rule does not prohibit parties from orally modifying a written contract. But plaintiffs here have not pleaded facts that set forth plausible grounds for relief on a theory of subsequent oral modification. In my view, plaintiffs impermissibly seek to circumvent the parol evidence rule. They allege a subsequent oral modification that is explicitly based on evidence of a prior oral agreement that is itself barred by the parol evidence rule. Accordingly, I will grant defendants' motion to dismiss with prejudice.

## BACKGROUND

The operative complaint alleges the following facts that I assume to be true for purposes of evaluating defendant's motion to dismiss. Plaintiffs are Paul Gibilisco and the Pidru Family Limited Partnership, a Nevada limited partnership (for which Gibilisco and his spouse are limited partners). Doc. #41 ¶ 1. Defendant is Wells Fargo Bank, as successor to Wachovia Bank.

In November 2007, plaintiffs entered into two identical investment management agreements with Wachovia Bank, one for the Gibilisco Trust (for which plaintiff Paul Gibilisco

served as trustee) and one for the Pidru Family Limited Partnership. Doc. #41 ¶ 6 & Exh. A. Both agreements contemplated that plaintiffs would execute so-called "Investment Policy Statements" specifying their investment preferences. *Id.* ¶ 8. The agreements designated Wachovia to manage plaintiffs' investment funds and provided in part that Wachovia "will make investment decisions in accordance with its understanding of Client's risk tolerances and purpose in investing, as described in the Investment Policy Statement," *Id.*, Exh. A at 14, 23, and that Wachovia "intends to manage Client's assets within an agreed upon style, consistent with the investment objectives presented on [each] Client's Investment Policy Statement." *Id.*, Exh. A at 17, 26. The agreements otherwise specified that they constituted the "entire agreement" between the parties. *Id.*, Exh. A at 19, 28.

Salvatore Tartaglione was the Wachovia financial consultant in charge of the Gibilisco and Pidru accounts. *Id.* ¶¶ 10–11. Plaintiffs allege that they advised Tartaglione in December 2007 of their desire for only "safe" investments with minimal potential for loss of principal. *Id.* ¶ 12. Tartaglione allegedly recommended investment in 80% high quality rated corporate bonds and 20% high quality dividend paying stocks, and plaintiffs told Tartaglione that they "accept whatever income would be achieved by such a conservative asset allocation so as not to lose any principal." *Id.* ¶ 13.

But despite this agreement, Tartaglione sent plaintiffs two Investment Policy Statements in early January 2008 that were allegedly "inconsistent with the Plaintiffs' financial objectives" and with plaintiffs' desire for investment in mostly corporate bonds rather than equities. *Id.* ¶ 15. The Investment Policy Statements specified plaintiffs' preference for an investment portfolio with far greater equity exposure than what plaintiffs had allegedly agreed to with Tartaglione.[1]

---

[1] The Investment Policy Statement for the Pidru Family Limited Partnership's assets describes the asset allocation targets as 25–35% fixed income, 50–60% equities, and 10–20% hard assets such as real estate and

According to plaintiffs, when they asked Tartaglone about the inconsistencies, he told them to execute the statements anyway, assuring them that they were just a "general framework" that was needed for internal corporate policy reasons. *Id.* ¶ 16. Tartaglione had already signed both Investment Policy Statements, and plaintiffs counter-signed the statements on January 7, 2008. *Ibid*; *see also* Doc. #45-2 at 9; Doc. #45-3 at 8. In the meantime, plaintiffs made arrangements to transfer their assets from another brokerage firm to Wachovia, and there was about $4.7 million at that time in plaintiffs' new accounts with Wachovia. Doc. #41 ¶ 14.

Tartaglione allegedly continued to assure plaintiffs from mid-January 2008 onwards that "he understood the true nature of Plaintiffs' investment objectives and that the asset allocations with which they felt comfortable were different than those set forth in the Investment Policy Statements and that despite what was set forth therein he agreed that he would manage Plaintiffs' Accounts through an investment in the Accounts of 80% high quality rated corporate bonds and 20% high quality dividend paying stocks as previously discussed." *Id.* ¶ 17.

Over the spring and early summer of 2008, plaintiffs allegedly informed Tartaglione that the statements they had been receiving from Wachovia seemed to reflect asset allocations inconsistent with their objectives. He assured them multiple times that the investments were consistent with plaintiffs' objectives, "as they had orally agreed to in mid-January 2008." *Id.* ¶¶ 20–21.

In late August 2008, Gibilisco told Tartaglione that he was concerned about the financial climate and "specifically asked Tartaglione to review the asset holdings in the Accounts and ensure that the holdings were all in very safe financial vehicles consistent with the Plaintiffs' investment objectives and that the holdings were of the type that would not sustain any

---

commodities. Doc. #45-2 at 4. The Investment Policy Statement for the Gibilisco Trust's assets describes the asset allocation targets as 35–45% fixed income, 40–50% equities, and 10–20% hard assets. Doc. #45-3 at 4.

significant market losses." *Id.* ¶ 22. He brought up the possibility of moving the holdings into U.S. Treasury notes and bonds. *Id.* ¶ 23. Tartaglione assured him, though, that everything was safe where it was, and convinced him to "'stay put' and not make any changes in the Accounts at the time." *Ibid.*

During the fall of 2008, Gibilisco and Tartaglione had several conversations in which Gibilisco expressed his concerns about the stock market's decline and significant losses in his accounts. *Id.* ¶¶ 24–26. That was when Gibilisco allegedly learned that the value of the account had dropped to about $3.5 million and that Tartaglione "had not abided by the modified terms of the Investment Policy Statements." *Id.* ¶ 25. By March 2009, plaintiffs transferred their remaining assets to a different brokerage firm, having by then suffered a total alleged loss of $1,268,000. *Id.* ¶ 29.

In February 2014, plaintiffs commenced this breach-of-contract action against defendant in Connecticut state court. One month later, defendant timely removed the action to federal court. After plaintiffs filed a first amended complaint, defendant moved to dismiss the complaint, principally on the ground that the parol evidence ruled barred plaintiffs' claim because plaintiffs based their claim on an oral agreement that arose prior to and was inconsistent with the parties' later written agreements.

In October 2014, I granted that motion to dismiss. I concluded that "[it] is clear that the Amended Complaint was drafted without the limitations of the parol evidence rule in mind, as it alleges that defendant failed from the very start of the investment relationship to follow plaintiffs' risk tolerances and investment preferences and objectives." Doc. #39 at 2. Nevertheless, in light of defendant's concession that the parol evidence rule does not as a matter of law foreclose a valid claim of subsequent oral modification of a written contract, I granted

plaintiffs leave to amend their complaint to the extent that they could properly allege facts to establish a valid subsequent oral modification to the Investment Policy Statements that they had signed. *Ibid.* Plaintiffs soon filed their second amended complaint with the allegations described at length above, Doc. #41, and defendant has again moved to dismiss, Doc. #45.

## DISCUSSION

The principles governing consideration of a motion to dismiss pursuant to Rule 12(b)(6) are well established. First, I must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The parties agree—and consistent with the choice-of-law clause set forth in their agreements—that this dispute is governed by the law of the State of Nevada. Under Nevada law, parol or extrinsic evidence outside of the written terms of a contract "is not admissible to add to, subtract from, vary, or contradict . . . written instruments which . . . are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake[.]" *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913–14, 193 P.3d 536 (2008) (internal quotation marks and citation omitted). The parol evidence rule "'forbids the reception of evidence which would vary or contradict the [written] contract, since all prior negotiations and agreements are deemed to have been merged therein.'" *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 281, 21 P.3d 16 (2001) (quoting *Daly v. Del E. Webb Corp.*, 96 Nev. 359, 361, 609 P.2d 319 (1980)).

6

Although the parol evidence rule "generally bars extrinsic evidence regarding prior or contemporaneous agreements that are contrary to the terms of an integrated contract," the rule does not prohibit evidence of "a subsequent alteration of an agreement." *Khan v. Bakhsh*, 306 P.3d 411, 413–14 (Nev. 2013) (internal citations omitted). Here, plaintiffs contend that their conversations with Tartaglione in mid-January 2008 constituted a subsequent modification of their prior written agreements and that that this subsequent modification is enforceable as an oral contract notwithstanding the parol evidence rule.

I am not persuaded. To begin with, the fact that the complaint conclusorily alleges that there was a subsequent oral modification is not enough, without more, for plaintiffs to survive a motion to dismiss.[2] To the contrary, I must look to whether the actual facts they allege—apart from the legal labels that they might affix—are sufficient to establish a plausible ground for relief. *See Iqbal*, 556 U.S. at 678 (court is "not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks and citation omitted);. *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 253 (2d Cir. 2014) (noting "require[ment] that a complaint *support* the viability of its claims by pleading sufficient nonconclusory factual matter to set forth a claim that is plausible on its face" (emphasis in original)).

Here, the facts alleged are that plaintiffs had a single oral agreement and understanding with Tartaglione both *before* and *after* their execution of the Investment Policy Statements for Tartaglione to invest their assets in a manner different than they specified in writing in the Investment Policy Statements. Paragraph 17 of the complaint alleges that Tartaglione understood the "true nature" of plaintiffs' portfolio preferences and that, "despite" the Investment Policy Statements, the parties agreed in mid-January 2008 that he would manage plaintiffs' accounts "as

---

[2] *See, e.g.*, Doc. #41 ¶ 30 (alleging that "the Investment Policy Statements . . . were orally modified by Tartaglione and the Plaintiffs in or about mid-January 2008"); *id.* ¶ 33 (same allegation that written agreements were "orally modified").

7

previously discussed" prior to plaintiffs' execution of the Investment Policy Statements. *See* Doc. #41 ¶ 17. The actual facts alleged in the complaint reflect a "modification" that was no more than a continuation of what plaintiffs had previously agreed to with Tartaglione before they signed the Investment Policy Statements.

Moreover, it is well established that a complaint may not survive a motion to dismiss if its general allegations are contradicted by its specific allegations of fact. *See, e.g.*, *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012). Here, the general allegations of an oral modification are contradicted by the specific allegations that the parties would proceed "as previously discussed" prior to the execution of the written Investment Policy Statements.

Relatedly, it is clear that plaintiffs' oral contract claim will rise or fall on evidence of an alleged oral agreement that arose before the written agreements—evidence that is plainly barred by the parol evidence rule. At oral argument, plaintiffs insisted that they would not use extrinsic evidence of discussions prior to the signing of the written agreements, but the complaint itself is replete with such allegations of an oral agreement that arose prior to plaintiffs' execution of the Investment Policy Statements. *See, e.g.*, Doc. #41 ¶¶ 13, 15. And this antecedent oral agreement is the indispensable predicate for plaintiffs' claim of a subsequent oral modification of the written agreements.

The parol evidence rule would mean little if parties were free to circumvent it by means of the pleading artifice that plaintiffs attempt here. Courts are sensitive to pleading gambits that are designed to evade the application of the parol evidence rule. *See, e.g.*, *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999) (parol evidence rule precludes reliance on

promissory estoppel as alternative to contract claim); *Fr. Winkler KG v. Stoller*, 839 F.2d 1002, 1006 (3d Cir. 1988) (parol evidence rule precludes evidence of oral promises that written agreement was only a matter of form and would not be enforced).

A sensible interpretation of the parol evidence rule does not allow a plaintiff to resuscitate an otherwise barred claim by means of claiming a "subsequent oral modification" that is itself founded on a prior oral agreement that is barred by the parol evidence rule. *See, e.g.*, *Cambridgeport Sav. Ban v. Boersner*, 413 Mass 432, 440, 597 N.E.2d 1017 (1992) (rejecting "erroneous belief that the same evidence of a contemporaneous agreement that was excluded under the parol evidence rule could prove [a party's] theory of subsequent oral modification").

After all, "the parol evidence rule … is concerned not so much with what the parties meant when they used a particular word or phrase, but with what evidence may be considered in determining what constitutes the parties' agreement." 11 WILLISTON ON CONTRACTS § 33:1 (4th ed. 1993 & Supp. 2012). The evidence here is properly barred by the parol evidence rule. *See also* Gregory Scott Crespi, *Clarifying the Boundary Between the Parol Evidence Rule and the Rules Governing Subsequent Oral Modifications*, 34 Ohio N.U.L. Rev. 71, 76 (2008) (discussing oral agreements that "straddle" in one manner or another the execution of a written contract and recommending that "oral agreements technically formed by oral acceptance or reliance upon the promise after the execution of a written contract, but which are based on alleged pre-contractual oral promises, should perhaps be regarded as pre-contractual agreements for parol evidence rule purposes"). Accordingly, in light of the operation of the parol evidence rule, plaintiffs have not alleged facts that set forth plausible grounds for relief.

## CONCLUSION

Defendant's motion to dismiss (Doc. #45) is granted. Because plaintiffs have twice

amended their complaint and because it is apparent that further amendment would be futile in light of the facts that plaintiffs assert, the complaint is dismissed with prejudice.

The Clerk shall close this case.

It is so ordered.

Dated at Bridgeport this 19th day of May 2015.

                                            /s/ *Jeffrey Alker Meyer*
                                            Jeffrey Alker Meyer
                                            United States District Judge